IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DAMEON THOMAS, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:11-cv-0038 ) |
| UNITED STATES OF AMERICA, | ) Judge Trauger ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION**

Petitioner Dameon Thomas, a prisoner presently housed at the Federal Correctional Institute in Memphis, Tennessee, brings this *pro se* action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence imposed by this court on November 25, 2008, after a jury trial.

**I.   FACTUAL BACKGROUND AND UNDERLYING PROCEEDINGS**

On September 29, 2005, Officer Adam Lenz of the Columbia Police Department in Maury County, Tennessee, approached a parked Hummer H2 vehicle in the parking lot of a shopping mall for allegedly playing loud music in violation of an excessive-noise ordinance. When Lenz approached the vehicle, he smelled marijuana. Petitioner Dameon Thomas was sitting in the driver's seat. The Hummer was registered to Thomas's girlfriend at the time, Tiffany Gardner. According to Thomas's own testimony, he had been sitting in the car for several minutes, listening to music and smoking marijuana while Gardner was shopping. While Lenz was waiting for back-up to arrive, Thomas handed him a baggie of marijuana.

Back-up officers arrived and Detective Andre Martin searched the vehicle, after obtaining consent from Gardner to do so. He discovered a loaded Taurus .40-caliber pistol underneath the driver's side passenger seat. The gun was later discovered to have been stolen. When asked to whom the gun belonged, Thomas responded that it was his. Additional .40-caliber ammunition was also found in the vehicle.

Thomas was arrested for unlawful possession of a weapon. While he was being transported to jail, he told the transporting officer, Officer Jason Sanders, that he was supposed to meet with a federal agent as part of a gang-prevention program, and that he had the gun because he was having problems with former gang members. At this point, Sanders administered *Miranda* warnings to Thomas. Thomas voluntarily

completed a gun questionnaire on which he indicated that he had bought the gun off the street, for protection, and that he owned other firearms.

Thomas was initially indicted on the charge of being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. On July 18, 2007, one day prior to the pretrial conference and six days prior to the scheduled trial date, the government filed a Superseding Indictment setting forth three new counts in addition to the single felon-in-possession count stated in the original indictment: being a convicted felon in possession of ammunition to go with the .40-caliber pistol (count two); knowingly possessing a stolen firearm (the same Taurus Millennium .40-caliber pistol) (count three); and unlawfully and knowingly possessing a quantity of marijuana, a Schedule I controlled substance (count four). (Case No. 1:06-cr-00009, ECF No. 71) The court denied the defendant's motion to dismiss the new counts, which the defendant claimed were added to the original indictment in retaliation for Thomas's assertion of his constitutional right to trial. After several resettings, trial was finally conducted beginning October 30, 2007. The jury returned a verdict of guilty as to all four counts in the Superseding Indictment. (Case No. 1:06-cr-00009, ECF No. 104.)

For various reasons, Thomas was not actually sentenced until over a year later. A sentencing hearing was conducted on November 24 and 25, 2008, at which Thomas himself testified and two other witnesses testified on his behalf. Judgment was entered on November 25, 2008, and this court sentenced Thomas to 180 months of imprisonment as to counts one and two, 120 months as to count three, and 12 months as to count four, all to run concurrently, with supervised release of 5 years on counts one and two, 3 years as to count three, and 1 year as to count four, all to run concurrently. (Case No. 1:06-cr-00009, ECF Nos. 188, 189.) The court further recommended that Thomas be placed in a drug-treatment program and a vocational-training program.

In imposing a prison sentence of 180 months, the court adopted the Presentence Investigation Report (Case No. 1:06-cr-00009, ECF No. 193) and imposed a prison sentence in compliance with the mandatory minimum established by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and U.S.S.G. § 4B1.4, thirty months below the lower end of the advisory Sentencing Guidelines range of 210 to 262 months. The court stated on the record the reasons for the court's determination that Thomas fell within

the Sixth Circuit's interpretation of the ACCA. (*See* Case No. 1:06-cr-00009, ECF No. 189-1 (Nov. 24, 2008 Sentencing Transcript), at 3:19–5:15 (considering and rejecting defense counsel's objection to Thomas's being considered an armed career criminal under the ACCA).)

Thomas promptly appealed his conviction and sentence; the Sixth Circuit affirmed effective August 16, 2010.

## II.  THE CURRENT PETITION

Thomas filed his original Motion to Vacate (Case No. 1:11-cv-00038, ECF No. 1) on July May 27, 2011, asserting only that the court had erroneously relied upon the 2007 edition of the United States Sentencing Guidelines ("U.S.S.G.") Manual in imposing a fifteen-year sentence, and as a result did not allow him the benefit of Amendment 709, which he claims went into effect on November 1, 2008, just before Thomas's sentencing. Shortly after the original petition was filed, the court conducted a preliminary examination thereof and determined that it stated a colorable claim for relief. The court entered an order (ECF No. 2) directing the respondent to answer, plead or otherwise respond to the petition. Rule 5, Rules Gov'g § 2255 Cases.

Shortly thereafter, well before the due date for the government's response, Thomas sought and received permission from the court to file an amended petition, which he did on July 28, 2011 (ECF No. 16). The amended petition does not mention the Amendment 709 issue; instead it raises numerous unrelated grounds for relief, mostly premised on claims of ineffective assistance of counsel and prosecutorial misconduct. Specifically, Thomas raises the following additional claims:

> 1. That the district attorney and public defender conspired against Thomas in introducing a "spliced" and altered version of a DVD that shows Thomas's arrest but omits certain events Thomas claims occurred, including a portion that would have shown that Tiffany Gardner "frantically ran around [the vehicle] screaming for Dect. Martin not to search the truck" (ECF No. 16, at 3); and another portion that would have conveyed a conversation between Thomas and Officer Sanders concerning Thomas's completion of the gun questionnaire.
>
> 2. That defense counsel was ineffective in failing to object to the introduction of the incomplete DVD.
>
> 3. That the complete DVD constitutes newly discovered "*Brady*" evidence that entitles Thomas to a new trial.
>
> 4. That trial counsel was ineffective for not arguing that Thomas has severe cognitive difficulties and borderline intelligence and was under the influence of drugs and alcohol, such that his waiver of his *Miranda* rights was ineffective and his confession involuntary and inadmissible at trial. (ECF No. 16, at 11–13.)

-3-

5. That trial counsel was ineffective for failing to bring a report compiled by psychological examiner Lyn McRainey, Ph.D. to the court's attention prior to trial, because the court might have used it to determine that Thomas was incompetent to stand trial.

6. That trial counsel was ineffective for failing either to introduce the psychological examiner's report at trial or to call Dr. McRainey to testify as an expert at trial in order to permit the jury to consider what "type of p[er]son Mr. Thomas is." (ECF 16, at 10.)

7. That Thomas's trial counsel was ineffective for failing to present expert testimony during the sentencing phase of trial "showing how both psychological deficits and Mr. Thomas' abusive childhood contributed to his alleged crime. Had the sentencing judge heard such testimony, there is a reasonable probability that she would have afforded more weight to the mitigating circumstances." (ECF 16, at 13.)

8. That trial counsel was ineffective in choosing to call Tiffany Gardner to testify, because doing so violated Thomas's Confrontation Clause rights under the Sixth Amendment and because counsel had not interviewed Gardner prior to trial.

9. That Thomas was denied due process of law as a result of the court's failure to instruct the jury "concerning the willful lies by Tiffany Gardner." (ECF No. 16, at 15.)

10. That Thomas was subject to "vindictive and malicious prosecution" as evidenced by the filing of a superseding indictment asserting new counts virtually on the eve of trial, and not in relation to the discovery of new evidence.

The government filed its response to the amended petition on September 28, 2011 (ECF No. 22). In a brief reply (ECF No. 23), Thomas pointed out that the government did not respond to the argument set forth in his original petition. With the court's permission, the government filed a surreply, first arguing that the amended petition completely supplanted and replaced the original, but also addressing the merits of Thomas's Amendment 709 issue. Thomas, also with the court's permission, has now filed a reply to the surreply in which he adds the arguments that his trial counsel was ineffective for failing to object at sentencing, or on appeal, to the use of the 2007 edition of the Sentencing Guidelines Manual at his sentencing, and that he should not have been classified as an armed career criminal. The court understands Thomas's amended petition to supplement his original and will consider both petitions and all the arguments he has raised.

### III. STANDARD OF REVIEW

To be entitled to relief, a prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a §

-4-

2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) cause and actual prejudice, *United States v. Frady*, 456 U.S. 152, 167--68 (1982) (citations omitted), or (2) "actual innocence," *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (citations omitted). A claim of ineffective assistance of counsel, however, is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.*

To make out a claim of ineffective assistance of counsel, a movant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687--88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). Thus, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record,

-5-

inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Rule 4(b) of the Rules Governing § 2255 Proceedings provides that if it plainly appears from the face of the § 2255 motion, exhibits, and prior proceedings that the petitioner is not entitled to relief, the judge shall make an order for its summary dismissal.

In this case, Thomas has not sought a hearing. Moreover, upon consideration of the original motion, amended petition, response, reply , surreply, and the reply to the surreply filed in the present case, the court finds that the motion, files and court records conclusively demonstrate that the movant is not entitled to the relief sought and that an evidentiary hearing is not required. The court will dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2255 Cases.

## IV.  ANALYSIS AND DISCUSSION

### A.  The Applicability of Amendment 709

The court construes the argument set forth in Thomas's original Motion and his recently filed reply to the government's surreply as a contention that his trial counsel was ineffective for failing to object to the court's sentencing based on the 2007 version of the United States Sentencing Guidelines Manual, as a result of which he did not receive the benefit of Amendment 709. Thomas further argues that, even if Amendment 709 does not apply, his trial counsel was still ineffective for failing to object to the use of the 2007 edition for his sentencing and that his counsel should have argued that the three robbery convictions, upon which application of the ACCA was premised, were committed on separate occasions.

These arguments are wholly without merit, for a number of reasons. First, Amendment 709 went into effect in 2007, so it would have applied, even if the court erroneously used the 2007 edition of the Guidelines. *See* U.S.S.G. Manual app. C, amend. 709 (2007) ("The effective date of this amendment is November 1, 2007. ") Second, Amendment 709 effected a change to U.S.S.G. § 4A1.2(a)(2) pertaining to the calculation

of a defendant's criminal history points.[1] As the government points out, Amendment 709 is irrelevant here because Thomas was not sentenced under § 4A1.2. Instead, he was sentenced under the Armed Career Criminal Act (ACCA), codified at 18 U.S.C. § 924(e)(1), and U.S.S.G. § 4B1.4, which specifically cross-references the ACCA. The ACCA imposes a mandatory minimum sentence of fifteen years for any person convicted of violating 18 U.S.C. § 922(g) who has three (or more) prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The ACCA defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year" that "(I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B).

This court found that Thomas qualified as an armed career criminal based upon three prior convictions for aggravated robbery in October 1992, as set forth in the Presentence Report . (ECF No. 193, at 6–7.) The court found that these convictions counted as three separate convictions based on the Sixth Circuit's interpretation of the ACCA.[2] Contrary to Thomas's suggestion, his attorney appealed that finding but the Sixth Circuit affirmed, discussing the matter at length. *United States v. Thomas*, 381 F. App'x 495, 504–08 (6th Cir. 2010). It is therefore clear that, under Sixth Circuit precedent and the law of this case, Thomas was correctly classified as an armed career criminal under § 924(e)(1) based on his prior convictions.

Finally, with respect to Thomas's argument that the court erroneously sentenced him using the 2007 instead of the 2008 edition of the Sentencing Guidelines Manual, Thomas has not shown how this purported error made any difference in his sentencing, such that he was prejudiced by his attorney's failure to raise this

---

[1] Pursuant to Amendment 709, U.S.S.G. § 4A1.2 was modified to provide that, in calculating a defendant's *criminal history points*, prior sentences should always be counted separately "if the sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). If there is no intervening arrest, prior sentences should be counted as a single sentence if the sentences "resulted from offenses contained in the same charging instrument" or "were imposed on the same day." *Id.*

[2] The punishment imposed on the basis of these convictions likely would have been counted as a single sentence under the amended version of § 4A1.2, but again, Thomas was not sentenced under § 4A1.2.

issue on appeal.  Nor could he, since Thomas was sentenced in accordance with the mandatory minimum imposed by the ACCA, which was thirty months below the recommended Sentencing Guidelines range.

Thomas is not entitled to relief based on his claims regarding the applicability of Amendment 709 or the ACCA.

### B. The Allegedly "Spliced" DVD

Thomas raises several arguments relating to his allegations that the DVD shown at trial was edited to delete certain events he claims occurred.  He asserts that both the government and his defense counsel withheld exculpatory evidence and were permitted to do so by the court.  Specifically, Thomas claims that the attorneys conspired to "splice" the DVD used in the prosecution of the case by removing a portion that allegedly would have shown his then-girlfriend, Tiffany Gardner, frantically running around the vehicle, which should have alerted the police officers that she did not consent to a search of the vehicle, and that another omitted portion would have documented a conversation between Thomas and Officer Sanders during Thomas's transportation to the police station and would have shown that Thomas was effectively coerced into signing the gun questionnaire.  (ECF No. 16, at 2–3.)  In addition to a prosecutorial-misconduct claim related to the alleged DVD splicing, Thomas appears to be claiming that his defense counsel was ineffective in failing to object to the introduction of the incomplete DVD and that the complete DVD constitutes newly discovered "*Brady*" evidence that entitles him to a new trial.

As stated above, section 2255 motions are not intended to be substitutes for direct appeals.  Rather, as a general rule, they are to be used only for raising alleged errors of law that are jurisdictional or constitutional in nature or that amount to a fundamental defect that results in a complete miscarriage of justice.  *Reed v. Farley*, 512 U.S. 339, 353--54 (1994).  A nonconstitutional issue which could have been asserted on direct appeal, but was not, may not be raised in a collateral proceeding, *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976), unless the movant shows cause excusing his failure to raise it previously and actual prejudice resulting from the alleged error.  The claims related to the alleged improper redaction of the DVD (including prosecutorial misconduct, ineffective assistance of counsel, and the withholding of exculpatory evidence) are of the type that may be raised in a § 2255 proceeding.  The problem is that, beyond his completely unsupported assertions, Thomas has no evidence that the events he claims were

-8-

redacted from the DVD ever occurred or that the DVD in fact was edited to remove evidence of them. When a defendant files a § 2255 petition, he must set forth *facts* that show he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

Under this standard, it is apparent that Thomas's claims are without merit. His allegations regarding the altered DVD and the events he claims the original DVD would have documented are unsupported by the factual record and instead are flatly contradicted by the available evidence; Thomas's veracity is further called into question by his failure to raise a claim that the evidence had been tampered with either during pretrial proceedings or during trial. Specifically with respect to the *Brady* claim, Thomas is not actually in possession of newly discovered exculpatory evidence, nor does he have any evidence to support his claim that the government or anyone else is in possession of the alleged exculpatory evidence (i.e., the "complete" DVD).

Further, even if Thomas could establish the existence of an unredacted DVD or that the complete DVD would have included scenes showing that Gardner objected to the search of her vehicle or that Thomas was coerced to sign the gun questionnaire, he cannot show that he was prejudiced by the withholding of this evidence. As the government correctly points out, the police officers who arrested Thomas had probable cause to do so, as well as probable cause to search the vehicle, based on the undisputed fact that Thomas was smoking marijuana in his car at the time he was first stopped, as the court stated when announcing the ruling on Thomas's motion to suppress. (*See United States v. Thomas*, Case No. 1:06-cr-00009, ECF No. 58 (Transcript of Suppression Hearing, March 29,2007), at 9:16–18 ("So at that point – and the officer certainly testified that he smelled marijuana the minute the window was rolled down. So in the court's view, right there the officer had probable cause to not only arrest the defendant for a drug offense but also to search the car.").) The police officers therefore did not need Gardner's consent to justify a search of the vehicle; as a result, Thomas's claim that Gardner did not consent to the search is irrelevant. Likewise, Thomas had already admitted ownership of the gun that gave rise to the felon-in-possession charges before signing the gun questionnaire, so any alleged veiled coercion with respect to his signing the questionnaire is immaterial.

In short, Thomas waived his claims relating to the DVD by failing to raise them at trial or on direct appeal. Even if the issues were not waived, the record is devoid of any factual basis to support them; and

even if there were evidence to suggest the DVD was in fact improperly redacted, Thomas cannot show that he was prejudiced by the failure to present the scenes he claims were omitted. The claims relating to the DVD are without merit and do not warrant the relief sought.

**C.     The Failure to Introduce Evidence of Thomas's Psychological Evaluation during Pretrial Proceedings, at Trial, or during Sentencing**

Thomas raises several interrelated arguments regarding his trial counsel's failure to introduce at trial evidence that Thomas suffered from a cognitive impairment and substance abuse. First, Thomas argues that the report completed by Psychological Examiner Lyn McRainey, Ph.D. establishes that he suffers from "sever[e] cognitive difficulties and borderline intelligence" as well as drug addiction, such that he could not knowingly and voluntarily waive his *Miranda* rights, sign the gun questionnaire, or confess to ownership of the gun. Second, Thomas appears to be claiming that his attorney was ineffective for failing to bring Dr. McRainey's report to the court's attention prior to trial, because the court might have used it to determine that Thomas was incompetent to stand trial. Third, Thomas seems to be claiming that his trial counsel was ineffective for failing either to introduce the report at trial or to call Dr. McRainey to testify as an expert at trial in order to permit the jury to consider what "type of p[er]son Mr. Thomas is." (ECF 16, at 10.) Finally, he claims his trial counsel should have presented expert analysis during the sentencing phase of trial "showing how both psychological deficits and Mr. Thomas' abusive childhood contributed to his alleged crime," and that, if "the sentencing judge heard such testimony, there is a reasonable probability that she would have afforded more weight to the mitigating circumstances." (ECF 16, at 13.)

As an initial matter, it is clear that Thomas's claims that his cognitive difficulties and substance abuse made it impossible for him to knowingly and voluntarily waive his *Miranda* rights, sign the gun questionnaire, or confess to ownership of the gun are waived as a result of his failure to raise them at the appropriate time. *See* Fed. R. Crim. P. 12(b)(3) (requiring that motions to suppress evidence be raised prior to trial); Fed. R. Crim. P. 12(f) (failure to raise 12(b) motions before trial constitutes waiver thereof). Moreover, the evidence of record does not support Thomas's claim that his cognitive impairment or drug use impaired his ability to knowingly and voluntarily waive his *Miranda* rights or to confess. Thus, to the extent Thomas is attempting to raise an ineffective-assistance claim based on his attorney's failure to raise this argument, the claim fails because he cannot show that he was prejudiced by the attorney's decision not to raise this claim.

Likewise, even taking the psychological examination into account, there is no evidence in the record that suggests Thomas was incompetent to stand trial. Nor has Thomas shown how introduction of the report at trial, for the jury's consideration, would have had any effect on the outcome of the trial. The jury heard Thomas's self-contradictory testimony and elected not to believe his version of events. His relatively low IQ and difficult childhood were simply not relevant to the determination of his guilt, so Thomas's attorneys had no reason to attempt to introduce Dr. McRainey's report to the jury.

Finally, Thomas cannot show that his counsel was ineffective for failing to present expert testimony during the sentencing hearing or that he was prejudiced by the decision not to do so. The record is clear that trial counsel did introduce evidence of Thomas's cognitive defect and childhood abuse during sentencing. Thomas's mother and sister both testified regarding his good qualities and care for them and his traumatic childhood. The court took these mitigating circumstances into account, along with Dr. McRainey's report, before handing down a below-guidelines sentence.[3]

All the claims related to the introduction of the Psychological Examination are without merit.

### D. The Testimony of Tiffany Gardner

Thomas raises several arguments relating to his defense counsel's decision to call Tiffany Gardner as a defense witness at his trial: He claims that his trial attorney was ineffective based on his decision not to interview Gardner before trial and his decision to call Gardner as a defense witness; that Gardner's testimony was unfairly prejudicial and violated Thomas' rights under the Confrontation Clause embodied in the Sixth Amendment; and that he was denied due process of law when the court failed to give "instructions concerning the willful lies by Tiffany Gardner." (ECF No. 16, at 15.)

---

[3] Thomas also claims his trial counsel was ineffective for failing to introduce during the sentencing phase "additional mitigating evidence, including the additional testimony of friends and relatives." (ECF 16, at 15.) He does not indicate what this additional evidence would have shown or how he has been prejudiced by the failure to include it, so this claim is subject to denial as well.

He also appears to be raising a claim that the court violated his constitutional rights by admonishing him during his direct examination at trial, particularly in light of the fact that he suffers from a cognitive defect. As the government points out, there is no evidence that the court would have refrained from reproaching Thomas during trial if the court had known about his cognitive defect; and there is no evidence that the purported admonishment had any effect on the outcome of the trial in light of the overwhelming evidence of Thomas's guilt. Thomas has not shown that the court's purported admonishment of him during trial violated his constitutional rights, or that he was actually prejudiced by the alleged admonishment.

-11-

With respect to the first claim, the record clearly establishes that Thomas's counsel did interview Gardner at least once: Gardner admitted under cross examination that she met with Thomas's attorney and told him that she owned the firearm Thomas was charged with possessing. Thomas has not established that Gardner would have consented to another interview or what effect another interview would have had. Even if the decision not to interview her again could be deemed evidence of ineffectiveness, Thomas has not shown that he was prejudiced by that decision.

The court construes the claims related to the decision to call Gardner to testify as claims that defense counsel was ineffective for calling Gardner as a witness because she had already lied about her ownership of the gun (denying such); that she was biased against Thomas because he had ended their relationship in favor of another woman; and that, because she was called as a defense witness, she could not be effectively cross examined.[4] He claims that his Confrontation-Clause rights were violated because he was not permitted to cross-examine Gardner, and that he was prejudiced thereby.

Thomas's contentions to the contrary, the record reflects that Thomas's trial counsel was allowed to cross-examine Gardner and to impeach her credibility at trial. Specifically, the record reflects that trial counsel was permitted to treat Gardner as a hostile witness and to cross-examine her, even though she had been called as a defense witness. (*See* ECF No. 108, at 157–58 (Trial Transcript at 334:24–335:3).) Thomas's attorney then proceeded to attack Gardner's credibility by confronting her with her own contradictory statements and by eliciting an admission from Gardner that she became very upset when she learned Thomas had married another woman. Thomas's counsel also called another witness, Christopher Tillman, who testified that he overheard Gardner tell Thomas, "You are not going to be married for long because I'm going to have you locked up and I know how to do that." (ECF No. 108, at 195 (Trial Transcript 372:10–11).)

Although the jury heard this evidence, it nonetheless elected to believe Gardner's testimony over

---

[4] Gardner was Thomas's girlfriend and was with Thomas the night of his arrest; they were driving her vehicle. Thomas, after initially claiming ownership of the gun found in the vehicle at the time of his arrest, later asserted that the gun really belonged to Gardner and that he claimed it in order to protect her. Gardner initially claimed that she had bought the gun (later determined to have been stolen) off the street but later stated it belonged to Thomas. Thomas claimed that Gardner was lying because she was angry with him for taking up with another woman. As was noted at trial, Gardner had no record and had no reason to purchase a stolen gun off the street when she had the ability to walk into any gun store and purchase a gun legally.

-12-

Thomas's. The fact that the jury believed Gardner does not mean that Thomas's counsel was ineffective in deciding to call her as a witness. In fact, the decision whether to call a witness to testify at trial is a matter of strategy that falls squarely within defense counsel's domain. Defense counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound trial strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90; *Skaggs v. Parker*, 235 F.3d 261, 268 (6th Cir. 2000). The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions are difficult to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Thomas in this case has not overcome the presumption that the decision to call Gardner to testify fell within the range of competent assistance.

Moreover, Thomas cannot prevail on an ineffective-assistance claim unless he establishes that he was prejudiced by the alleged error. Here, Thomas cannot establish that he was prejudiced by the decision to call Gardner as a witness in light of the fact that he was permitted to cross-examine her and because the jury heard evidence of Gardner's bias and her contradictory testimony.

Finally, with respect to Thomas's complaint that the court should have instructed the jury that Gardner was a liar, the court observes that such an instruction would have been inappropriate. Factual findings, including determinations as to the credibility of a witness, lie solely within the province of the jury. *United States v. Henderson*, 626 F.3d 326, 341 (6th Cir. 2010). This claim too is without merit.

### E. Vindictive Prosecution

Last, Thomas claims that the government engaged in vindictive prosecution, as evidenced by the presentation of a superseding indictment on the eve of trial. Thomas raised this issue before trial (*see* Case No. 1:06-cr-00009, ECF No. 79 (Motion to Dismiss Counts Two, Three and Four of Superseding Indictment); the court considered and rejected the argument (Case No. 1:06-cr-00009, ECF No. 86). Thomas did not raise the issue on direct appeal, as a result of which the issue is deemed waived. Even if the claim were not

-13-

Case 1:11-cv-00038 Document 31 Filed 12/23/11 Page 13 of 14 PageID #: 189


waived, Thomas has failed to supply any legal support for the claim. The law is clear that the government has the ability to supersede an indictment at any point before trial. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely at his discretion.").

In addition, Thomas also cannot show that he was prejudiced by the superseding indictment. His trial date was continued to allow his counsel additional time to prepare (ECF No.72). Moreover, the new charges had no effect on his sentence. Thomas received the statutory minimum sentence under the ACCA, which represented a downward variance from the recommended Guidelines range. The ACCA would have applied even if Thomas had only gone to trial and been convicted on the sole count in the original indictment.

Accordingly, this claim, like the others, does not warrant the relief sought.

## IV. CONCLUSION

Thomas's motion under § 2255 does not present any meritorious issues. The motion will therefore be denied and this matter dismissed. An appropriate order will enter.

Aleta A. Trauger
United States District Judge

-14-